# THE SOUTH CAROLINA RAIL ROAD COMPANY
## *vs.* MOORE & PHILPOT.

1. There is a case pending in court between A and B. By a rule of the court it is referred to arbitrators, with the stipulation that no appeal shall lie therefrom to any court, " except for fraud, accident or mistake ;" with the further provision, that the arbitrators be guided by the rules laid down for the regulation of arbitrations in

South Carolina Rail Road Co. vs. Moore & Philpot.

the act of March 5th, 1856." Subsequently, the parties enter into an agreement out of court, submitting other matters, as well as those embraced in the suit, to arbitrators. The submission recites the rule of court and then declares that the arbitrators " shall be subject to the terms and provisions of the act of 1856 and the rule of reference which had been taken by the court in the case stated. *Held*, That either party was at liberty to except to the award " for fraud, accident or mistake, " according to the rule of reference," " and that the parties were not restricted to the right of objecting to the award merely on the ground of " fraud and corruption " in the arbitrators, according to the 15th and 16th section of the act of 1856, and that the reference to that act in the rule and the submission was only to make it a guide to the arbitrators in the mode of conducting the proceeding.

2.  An arbitrator cannot impeach his award eight days after it has been signed by him and soon after it has been published to the parties.

3.  The erection of a bridge across a navigable stream, so low as to obstruct the passage of boats, is a public nuisance.

A public nuisance is the subject of *indictment ;* not of *action.*

If, by a public nuisance, a party suffer particular damage, an action lies.

For any obstruction to the public highway, or a navigable stream, which is a public nuisance, though such obstructs the plaintiff's business, an action on the case cannot be maintained by the party so obstructed, unless under special circumstances ; the only remedy being by indictment.

4.  If an arbitrator act manifestly against law, and the error appear on the face of the award, the court will set aside the award.

A submission to arbitrators, provided amongst other things that out of the amount found for the plaintiffs, their counsel's fees should be deducted, and by the award made payable by the defendants, directly to the attorneys. An award was made making said provision. *Held*, That the counsel of plaintiffs were not necessary party to the motion to set aside the award ; nor to the writ of error sued out to reverse the judgment of the court made upon the award.

Award, in Richmond Superior Court. Decision by Juge Holt, at November Term, 1858.

This was originally an action on the case brought by John A. Moore and Thomas N. Philpot, owners of certain steamboats on the Savannah River, against the South

Carolina Railroad Company, to recover damages, alleged to have. been sustained by plaintiffs, by the erection of a railroad bridge across the Savannah river, opposite the city of Augusta, by the defendant, whereby the navigation of said river was obstructed, and plaintiffs, as steamboat owners, injured and damaged to the amount of ten thousand dollars.

The declaration and pleas are as follows, viz:

State of Georgia,  
. Richmond County.

*To the Honorable the Superior Court of said County:*

The petition of John A. Moore and Thomas N. Philpot, respectfully sheweth: That the South Carolina Railroad Company, a corporation which has extended the track of its road from the State of South Carolina into the City of Augusta, in the County and State aforesaid, where it is doing business, has greatly damaged your petitioners:—

For that heretofore, to-wit: on the fifteenth day of March, in the year of our Lord eighteen hundred and fifty-three, your petitioners were, and ever since have been common carriers by steamboats on the Savannah river, a navigable stream of said State of Georgia, between the mouth of Hawk's gully (above the said City of Augusta,) and the City of Savannah, in the said State of Georgia, and by right ought to have had, and still of right ought to have the use of the said navigable communication for the carriage of goods, wares and merchandise in their said boats in, upon and along said river between the places aforesaid. And whereas, before and at the time of the committing of the grievances hereinafter mentioned, the steamboat Fashion, owned by your petitioners, common carriers as aforesaid, was proceeding in, upon and along said river, with divers goods, wares and merchandise, therein to be carried and conveyed therein from Augusta, aforesaid, to Savannah aforesaid. Yet the said South

Carolina Railroad Company well knowing the premises, but contriving and intending to injure your petitioners in this respect, and to deprive them of the use and benefit of the said navigable stream, and to put them to great trouble, inconvenience and expense, whilst the said boat and the goods, wares and merchandise therein were so proceeding in, upon and along said river, to-wit, on the day and year aforesaid, and in the county aforesaid, and on divers other days and times between that day and the filing of this petition, by reason of a bridge unlawfully and improperly constructed by it over and across the said river, wrongfully, unjustly, and unlawfully obstructed said stream, and thereby stopped, prevented and hindered the said boat of your petitioners, laden as aforesaid, from proceeding in, upon and along the said river for a long space of time, to-wit, for the space of ten days, from the day and year aforesaid, and for the same length of time at each subsequent voyage between the places aforesaid, whereby your petitioners were not only deprived of the use, benefit and enjoyment of their said boat, but of all the benefit, profits and advantages which they might otherwise and would have made by the use and employment of the said boat, in the carriage and conveyance of goods, wares and merchandise in, and upon, and along the said river: All of which is to the damage of your petitioners ten thousand dollars.

*Pleas:*

And now come the defendants, by their attornies, and defend the wrong and injury, when, &c., and for answer say they are not guilty of the supposed grievances laid to their charge in the plaintiffs' petition in manner and form as said plaintiffs have therein complained against them, and of this they put themselves upon the country. And for further plea in this behalf, they say that their railroad bridge across the Savannah river, at and opposite the City of Augusta, was lawfully erected and is now maintained

under and by virtue of a contract entered into the 10th day of August, 1852, between them as parties of the one part, and the City Council of Augusta and the Trustees of the Academy of Richmond County, of the other part, which the said parties thereto were by competent authority fully empowered to make, and of this they put themselves upon the country.

And for further plea in this behalf, these defendants say, that if the said plaintiffs had sustained any damage whatever, in any way connected with the existence of their said railroad bridge, such damage has, without any wrongful act or default on the part of these defendants, resulted either from providential cause, or from the bad management, unskillfulness, or negligence of the said plaintiffs, their agents or servants, and of this they put themselves upon the country.

HENRY II. CUMMING, Defendants' Atty.

Upon the trial at common law, the jury found for the plaintiffs two thousand dollars, from which verdict defendants appealed. After the trial at common law, the following amendment of the declaration was made, by order of the court, viz:

*Amendment by order of Court.*

And now your petitioners further show, that being common carriers, as aforesaid, possessed of the steamboat aforesaid, at and between the fifteenth day of March, eighteen hundred and fifty-three, and the filing of this petition, and after the detention, delay and damage above set forth, occasioned by the construction of the said bridge by the said South Carolina Railroad Company, at a grade lower than the Augusta bridge, and without a draw, your petitioners found the risk, hazard and injury resulting from the act of taking their said boat above the said railroad bridge, so great, that they were obliged and compelled to abandon the attempt to make such passage,

South Carolina Rail Road Co. vs. Moore & Philpot.

as they were at any time liable to be detained with their said boat many days above said bridge, by a sudden fall of the river, and to cease taking freight from and carrying the same to the wharves above said bridge, and thereafter to load and unload their said boat at a point below the Augusta bridge, remote from the centre of business, in said City of Augusta, and especially distant from the places of business of many of the largest merchants in the city, who have been the patrons and customers of said boat, at a point to reach which drayage, labor and time were much increased, so that other carriers having boats differently constructed, with tow-boats and barges, and lighters that could pass said bridge in any stage of water : Your petitioners' boat having been built upon principles which gave her light draught, and with special reference to the state of the stream and the Augusta bridge, and thus to dispense with the expense of lighters, &c.; were enabled to take from your petitioners and monopolize the business derived previously by your petitioners' said boat from the above sources, and that this more especially as the accommodations for wharfage, below said bridge, were not suited to the trade, and did not afford proper facilities, and as the access by drays in some states of the weather was very difficult.

By means of all which premises, your petitioners lost the business of carrying freight for many of their former customers, lost much valuable time, and many trips up and down said river, and were put to other and greater expense.   All which wrongs and injuries, as well as in the delay and detention of your petitioners' boat, first above set forth, as in the loss to your petitioners of many trips by their boat (carrying freight), and of divers large quantities of freight withdrawn from said boat, as aforesaid, were caused by the unlawful conduct of said defendant, in erecting said bridge over said river, several feet lower than the Augusta bridge.   And by all of which

your petitioners have been endamaged in the sum of thirty thousand dollars. Wherefore, they file this, their petition, plainly, fully, and distinctly setting forth their cause of action, &c.

Wherefore, your petititioners bring suit and pray process, requiring the said South Carolina Railroad Company to be and appear at the Superior Court next to be held in and for said county, then and there to answer your petitioners in an action of trespass on the case.

A. J. & T. W. MILLER, Plff's Attys.

At May Term, 1858, the case still pending on appeal, the following rule of reference to arbitration was taken and passed by the court, viz:

JOHN A. MOORE and
THOMAS N. PHILPOT,
vs.                              } Case on Appeal.
THE SOUTH CAROLINA RAIL-
ROAD COMPANY.

THE UNION STEAMBOAT Co.
vs.                              }
THE SAME.

The parties having agreed to refer the above cases to arbitration, it is on motion ordered, that the matters in issue in the same, be referred to the arbitrament and award of such persons as may be selected by the parties, one of the arbitrators to be selected by the plaintiffs in the cases, another by the defendant, and these two to select a third, who shall be satisfactory to the parties, their assent to be signified in writing, and the award of said arbitrators shall be final and conclusive between the parties, no appeal to any court lying therefrom, except for fraud, accident or mistake.

It is further ordered, that the said award be returned to this court, and be made the judgment of the court, in the above cases.

It is further ordered, that the parties have leave to be

represented by their counsel before said arbitrators, and that the latter be guided by the rules laid down for the regulation of arbitrations in the act of March 5th, 1856.

Afterwards, on the 11th June, 1858, the parties entered into the following further agreement and submission, viz :

Georgia,                    )  Whereas, John A. Moore and
  Richmond County,  )  Thomas N. Philpot, owners of the Fashion Line of Steamboats, engaged in the transportation of freight upon the Savannah river, between the cities of Savannah and Augusta, on the fifth day of June, 1855, commenced their action against the South Carolina Railroad Company, alleging damage for and on account of losses and injuries and damage sustained by them by reason of the detention and delay of said boats, and by reason of the risk and hazard which (as they say) prevented said boats from passing above the bridge constructed over said river by said company, for a period of time between the 15th day of April, 1853, and the filing of their petition, to-wit, on the day and year aforesaid, and whereas, an order of the Superior Court, of said county, in which said action was commenced, and is now pending, has been taken, referring the matters in issue between the said parties, to arbitration under the provisions of the act of March 5th, 1856; and whereas, the said John A. and Thomas N., are claiming damages from the said Railroad Company for and on account of similar wrongs and injuries sustained by them, as they allege, since the 5th day of June, 1855, to the date of the award to be rendered, as proprietors of the said line of steamboats, from similar causes, viz, from the detention and delay of their boats, the "Fashion," "Fashion No. 2," "Atlanta," "Talamico," "Columbia," and the "Amazon," engaged in the transportation of freight between the ports of said cities, together with the injuries resulting from the difficulty and hazard of said boats passing above the bridge erected as aforesaid, by said company over the Savannah

river; the said railroad bridge having been constructed by the said company for the passage of trains on their railroad over the same, and maintained for this purpose; and whereas, the said parties in interest are desirous of determining and preventing litigation in relation to said matters in issue between them, and that justice should be done in the premises; therefore, they do now agree, the said the South Carolina Railroad Company, acting by its President John Caldwell, to submit all of the above matters to arbitration, subject to the terms and provisions of the said act af the General Assembly of the State of Georgia, and the rule of reference which has been taken in the case stated, leaving the arbitrators to decide the amount to be recovered of said company (if any), and all questions relating thereto; and for this purpose the parties have chosen Lambeth Hopkins, Esq., and Joseph Milligan as their arbitrators, and these two have made choice of James Hope, Esq., as a third arbitrator, and it is agreed that they shall proceed at once, and without delay, to hear the witnesses, and decide and adjudicate the said matters in issue, between the parties, and the award of the said arbitrators or a majority of them, shall be binding and obligatory upon all of the said parties in the premises, and shall be made in duplicate for the parties, and the original award shall be furnished to the next Superior Court of said county, to be made the judgment of said court, and entered on its minutes, as by the said act of March 5th, 1856, prescribed and required.

And it is further mutually agreed, that at the time when said award shall be made, the said John A. Moore and Thomas N. Philpot, shall execute full and complete discharges of the said South Carolina Railroad Company (if it be desired) from all claims and demands whatsoever, for the time embraced in the above submission, which discharge may be annexed to said award before the same is delivered to the parties, and the South Carolina Rail-

South Carolina Rail Road Co. vs. Moore & Philpot.

road Company agrees to pay the amount found against them, to the order of the said John A. Moore and Thomas N. Philpot, except the amount of counsel fees due by the said John A. and Thomas N. for and on account of the premises; which amount, by understanding with the parties, upon notification given by the said counsel to said company, as to the sum thereof, shall be paid to the said counsel in person, and that the costs of the case shall be paid according as the said arbitrators may tax the same, either by the one or the other party, or by both.

Witness our hands and seals, this the eleventh day of June, in the year eighteen hundred and fifty-eight, the erasure of the word damages being made before signing, in the tenth line from top of first page, the interlineation of the words "since the 5th day of June, 1855, to the date of the award to be rendered," in the 29th line from top of said page, being then also made, the erasures in the 9th, 10th, and 11th lines of second page, the interlineation of the word "arbitrators" in the 28th from the top of same page, and the erasure in the last line of said page, also the interlineation of the words "when said award shall be made," in the 16th line from top of 3d page.

JOHN A. MOORE,　[L.S.]
THOS. N. PHILPOT,　[L.S.]
JNO. CALDWELL,　[L.S.]
Pres. So. Ca. R. R. Co.

The following is the award made by the arbitrators under the foregoing rule and argument, viz:

JOHN A. MOORE
and
THOMAS N. PHILPOT,
vs.
THE SOUTH CAROLINA RAIL-
ROAD COMPANY.

We, the undersigned, arbitrators chosen and selected by the parties to the foregoing submission, in the manner

therein set forth, having first given the parties legal notice of the time and place of meeting, and having first been sworn in the presence of the parties and of their counsel, according to the statute in such cases made and provided, met and heard the case submitted to us upon its merits: And we do award that "The South Carolina Railroad Company" do pay to the said John A. Moore and Thomas N. Philpot, for their damages, the sum of twenty-nine thousand nine hundred and ninety-two 70-100 dollars ($29,992,77) less the amount of fees of the counsel of said John A. and Thomas N., and we award that the amount of such fees be paid by "The South Carolina Railroad Company," directly to the counsel. We further award, that all the costs of the case pending in the Superior Court of Richmond County, between the parties, be paid by the South Carolina Railroad Company, and that the compensation of the arbitrators, to-wit, the sum of one hundred and twenty dollars, be paid equally by the parties.

We further award, that a compliance with this award on the part of "The South Carolina Railroad Company," shall be and operate as a perpetual bar to any claim, or right of action by said John A. Moore and Thomas N. Philpot, against the South Carolina Railroad Company for any damage that they may have sustained, prior to the date of this award, by reason of the erection of the bridge across the Savannah river, by said company.

In witness whereof, we have hereunto set our hands and seals, this seventh day of July, eighteen hundred and fifty-eight.

LAMBETH HOPKINS, [L.S.]<br>
JOSEPH MILLIGAN, [L.S.]<br>
JAMES HOPE, [L.S.]

Served a copy of the within award on Henry H. Cumming, Esq., one of the attorneys of the defendants, this day, July 8th, 1858.      LAMBETH HOPKINS.

South Carolina Rail Road Co. vs. Moore & Philpot.

Served a copy of the within award on Millers & Jackson, attorneys of the plaintiffs, this day, July 8th, 1858.

LAMBETH HOPKINS.

Plaintiffs, at November Term, 1858, moved that the said award be entered on the minutes of the court. This motion defendant resisted, and filed the following exceptions and exhibits thereto, and moved that the said award be set aside and not made the judgment of the court, on the ground of mistake of the arbitrators in making their estimate of damages, viz:

1st. Said arbitrators allowed damages to the plaintiffs for possible prospective and speculative profits, which it was supposed said plaintiffs might have realized from their business, but for the erection of the bridge complained of in this action, which said profits on the hearing before said arbitrators these defendants by their counsel insisted were no legal ground for damages.

2d. After allowing damages for such profits as aforesaid, said arbitrators made no deduction from their estimate of damages on account of the profits actually realized by the plaintiffs, during the period when the injury sued for was alleged to have accrued.

And these defendants annex to these exceptions, by way of exhibit, to which they pray leave to refer, as parcel hereof, copies of communications addressed by one of said arbitrators to his associates, and duly furnished by him to the parties in the case or their counsel, the facts stated in which are verified by the affidavit of said arbitrator.

And these defendants pray the court, to call before it all of such arbitrators and examine them touching the premises.

And these defendants further except to any judgment being rendered in behalf of the plaintiffs in said case; for that it appears on the face of the record, that the plaintiffs have not and never had any sufficient cause of action against the defendants, but on the contrary said plaintiffs

in their said action claim damages for what by their own shewing is a public nuisance, for which no private action lies.

All which matters, said defendants allege in arrest of any judgment for said plaintiffs.

HENRY H. CUMMING,<br>
WM. T. GOULD,<br>
<em>Attorneys for Def'ts.</em>

(<em>Exhibits.</em>)

AUGUSTA, July 15th, 1858.

LAMBETH HOPKINS, Esq., Augusta:

*Dear Sir*—Since our last interview, on Monday, in relation to the award against the South Carolina Railroad Company, the doubts which I expressed to you, as entertained by myself, as to the correctness of that award, have been converted into a positive *conviction* that I was wrong.

I allowed a considerable amount, as you may remember, for prospective freight, and made the mistake of omitting to deduct a portion of the probable income that Mr. Moore's boats had received in the prosecution of their trips for the two years after they commenced running to the Central wharf, as testified by Capt. Philpot, and subsequently below the bridge.

As I have already stated to you, the doubts as to the correctness of allowing for prospective freight originated in my mind on last Friday evening, and I saw you the next morning in relation to that matter.

Under these circumstances, my purpose is formally to make known my dissent from the award as it now stands. As to the best mode of doing this, I am not yet determined. I shall furnish the counsel of each party with a copy of this communication, in the course of this week. I may perhaps deem this all that is necessary on my part. If I should determine to do anything more, you shall be

South Carolina Rail Road Co. vs. Moore & Philpot.

notified; and I would be obliged to you for any suggestions you may be pleased to make me on the subject.

I am, dear sir, very truly, yours,

JOSEPH MILLIGAN.

Georgia,       ⎫  Joseph Milligan being duly sworn,
Richmond County. ⎰ saith, that the facts stated it the foregoing letter, as to the basis assumed by the arbitrators in the foregoing stated case, are true, and that a copy of said letter was communicated to the counsel for the plaintiff within about a week of its date.

JOSEPH MILLIGAN.

Sworn to, and subscribed before me, Nov. 29th, 1858.

MICH'L F. BOISCLAIR, Not. Pub. R. Co.

(*Copy.*)

AUGUSTA, July, 15, 1858.

JAMES HOPE, Esq., Augusta:

*Dear Sir*—I called at your office several days ago to inform you, that I had serious doubts of the correctness of the principle I adopted in arriving at the amount awarded to Messrs. Moore and Philpot, against the South Carolina R. R. Company; but was informed that you had gone to Nashville. These doubts have now given place to a *conviction* that I was.wrong.

I allowed, as you may remember, a considerable amount for prospective freights, and the mistake of omitting to deduct a part of the probable income that Mr. Moore's boats had received in the prosecution of their trips for the two years after they commenced running to the Central wharf, as testified by Capt. Philpot, and subsequently below the bridge. The doubts as to the correctness of the principle I followed, in making the award, originated in my mind on Friday evening last, the 9th inst., whilst I was reviewing the several items which made up the aggregate. Having a painful sense of the consequence of my assent to it, I called on Mr. Hopkins the following

morning (Saturday,) and communicated to him my doubts. I also saw him on Monday ensuing and stated to him that my doubts had not been removed. Under these circumstances my purpose is formally to make known my dissent from the award, as it now stands. As to the best mode of doing this, I am not yet determined. I shall furnish the counsel of each party with a copy of this communication this week. I may perhaps deem this all that is necessary on my part. If I should determine to do anything more, you shall be notified; and I would be obliged to you for any suggestion you may be pleased to make on the subject on your return.

I am, dear sir, very truly, yours,<br>JOSEPH MILLIGAN.

Georgia, Richmond County. } Joseph Milligan being duly sworn, saith that the facts stated in the foregoing letter, as to the basis assumed by the arbitrators in the foregoing stated case, are true, and that a copy of said letter was communicated to the counsel for the plaintiffs, within about a week of its date.

JOSEPH MILLIGAN.

Sworn to, and subscribed before me, Nov. 29, 1858.

MICH. F. BOISCLAIR, Not. Pub. R. C. Ga.

The following judgment was pronounced by Judge Holt, on the foregoing motion and exceptions:

The order to enter upon the minutes of the court this award, which has been made and returned in strict conformity to the act under which the submission was made, is resisted on several grounds, which have been argued before the court. The two first may be resolved into one—"*mistake* of the arbitrators in making their estimate of damages." Is mistake a good ground why the award should not be entered? Fraud, accident, and mistake, are common heads of equity, against which courts will grant relief. And in the rule of reference of the case between the par-

South Carolina Rail Road Co. vs. Moore & Philpot.

ties on appeal, the only exception that could be taken to the award to be made under the rule, was for fraud, accident, or mistake, and such exception was expressly allowed. But when the submission of the 7th July, 1858, was entered into, the case of the parties, as therein stated, was brought strictly within the provisions of the act under which the submission was made. The 14th section of that act very [clearly points out the duty of the court, when the award is regularly returned, which is, that "said award shall be entered upon the minutes of the court." The effect of such entry, and the only means of avoiding that effect, are plainly stated in that section and the following. But whatever steps are taken against the award, must be taken after it has been received and entered upon the minutes of the court. For what cause an award may be attacked, and how set aside, is clearly stated in the 15th and 16th sections of the act. Fraud and corruption of the arbitrators are the only causes allowed by the law; the courts cannot go beyond the law and super-add mistake. There is, however, another ground, on which counsel for defendants rely with much confidence: it is the want of any sufficient cause of action against the defendants, as is (say they) apparent on the face of the record; and that "said plaintiffs in their said action claim damages for what, by their own shewing, is only a public nuisance for which no private action lies." The court does not think the case of the plaintiffs is stated in this ground; neither in the declaration, nor in the submission, are damages claimed by them for a public nuisance, but for private injuries arising from a public nuisance; and there can be no doubt but that for such injuries an action would lie. But whether the claim of plaintiffs to damages were well or ill founded it is unimportant here to inquire. There were certainly matters of controversy, and of a very grave character, between the parties, which they chose to submit to arbitration, and an award being returned

against the defendants, they are not now to be heard in denial of plaintiffs' right of action. If the transaction, which was the foundation of the controversy, was clearly illegal, gambling, for instance, and the submission was as to money won at cards, the award would assuredly be rejected. Courts never lend their aid in such matters. But that is a case as unlike the one before us as two cases can be unlike. It is not unlawful to navigate the Savannah river in steamboats; nor is it unlawful to build a bridge across the Savannah river, at Augusta, having license from the proper authorities. Both are lawful acts, and laudable too, if done in a lawful way. So to build as to obstruct the navigation of the river, is an unlawful act, and wrongful to him who is injured thereby, for which wrong and injury the law gives redress in damages. To obtain such redress, the action was brought and the submission made, and the award must be received and entered on the minutes, and the defendant left to pursue the course prescribed for vacating and setting it aside. The motion is allowed.

To which decision the defendant excepts; and says that said superior court erred therein, in this:

1. That under the rule of reference, and the submission of the case, either fraud, accident, or mistake, was expressly allowed, as a ground of exception to any award; and therefore the defendants could not be restricted to exception for fraud or corruption only.

2. That it was sufficiently shown to the court, by the affidavit of one of the arbitrators, that a mistake had been made in their award, 1st, in allowing damages for prospective profits, and 2d, in making no deduction from an estimate on that basis, on account of profits actually realized.

3. That even if the above showing were not complete, so as to decide finally the rights of the parties under the motion, it was at least, sufficient ground for causing the

South Carolina Rail Road Co. vs. Moore & Philpot.

court to stay any final judgment, till the arbitrators could be fully examined, and the fact of mistake proved or dispoved.

4. That on the face of the whole record, including the award, there was nothing on which judgment could be rendered for the plaintiffs; for that, by their own showing, they had been damaged, only by the direct result of a public nuisance, to which all other persons were subjected, and no special and consequential damage to said plaintiffs was alleged.

Wм. T. Gould, and Jas. L. Petigru, for plaintiff in error.

Millers & Jackson, and E. Starnes, contra.

By the Court.—Lumpkin, J., delivering the opinion.

1. The first question made in the record and discussed by counsel is, was this an arbitration under the rule of court, or under the act of 1856; or both?

There was a case pending in court between these parties, and there was a rule of reference made of it by order of the court, with the consent of parties. Subsequently there was an agreement entered into out of court, to submit, not only the matters embraced in the writ, but other matters in dispute not included therein, but germain to them. The agreement to submit provides distinctly, that the arbitration shall be subject to the rule of reference taken in the case, as well as to the terms and provisions of the act of 1856.

Now, the rule of reference expressly declares, that the award may be excepted to for "fraud, accident, or mistake." And yet counsel for the defendants in error insist, and so the court decided, that in as much as the act of 1856, authorizes an award to be excepted to only for fraud or corruption in the arbitrators, that the alleged *mistake*

416        SUPREME COURT OF GEORGIA.

South Carolina Rail Road Co. vs. Moore & Philpot.

in this award, is not examinable into. His Honor, the presiding judge, remarks—"But when the submission of the 7th July, 1858," (it should have been the 11th of June, 1858,) "the case of the parties as therein stated, was brought strictly within the provisions of the act under which the submission was made;" meaning the act of 1856. Is this so? and is this conclusion drawn from the fact that the submission was subsequnt to the rule of reference? This inference would have been legitimate had the submission failed to adopt the rule of reference and the terms of the law had been repugnant. But instead of this, it recites the pending of the action between these parties, and the order of the court refering the matters in issue to arbitrators; and then stipulates, as we have already stated, that the arbitration shall be "subject to the rule of reference taken in the case." We confess we are unable to see how, under these circumstances, the rule of reference is superseded or abrogated by the submission, although the former be prior in point of time.

The most that can be said is, that the submission, from inadvertence, or some other cause, has presented two contradictory rules to control the arbitration and award. Upon what principle are the defendants in error entitled to the full benefit of the 15th and 16th sections of the act of 1856; and to insist that the award can be attacked only for fraud and corruption according to the 15th; or fraud or corruption according to the 16th section of said act? May not the plaintiffs in error contend with equal plausibility and propriety that the award may be revised for "fraud, accident, or mistake," according to the rule of reference?

It is the duty of the court to harmonize, if possible, these apparently inconsistent stipulations in the submission so as to give effect to every part of it. The terms of the rule of reference itself, if carefully scrutinized, settle this difficulty conclusively. After providing that the award

of the arbitrators shall be final between the parties, no appeal to any court lying therefrom, "except for fraud, accident, or mistake," it was further ordered, "that the parties have leave to be represented by their counsel before the arbitrators; *and that the latter be guided by the rules laid down for the regulation of arbitrators in the act of March 5th,* 1856."

Here we have a key to unlock the true intent of the parties, when they agreed in the submission that the arbitration shall be subject both to the terms of the act of 1856 and of the rule of reference; they intended that the *arbitrators* should be guided in their proceedings by the act of 1856, examining the parties as witnesses, &c., but imposing no restriction upon the right of either to except to the award for "fraud, accident, or mistake." This we hold to be the obvious and undoubted construction of the submission.

2. Was the alleged mistake inquirable into upon the disclosures made by Joseph Milligan, one of the arbitrators? We do not find it necessary to decide this point, under the further view which we have taken of this case. We will say, however, that we see serious objections against permitting an arbitrator to impeach his award, as well as a juror his verdict, long subsequent to the time when the finding has been rendered. The award in this case, was signed the 7th day of July, 1858; the parties were furnished each with a copy on the 8th, and no complaint is made by the arbitrator until the 15th of that month. Jurors no doubt often become dissatisfied with their verdicts, and courts with their judgments, still they must stand as the law of the case. If the fact be as alleged in Milligan's letter, that the arbitrators awarded to the plaintiffs, a gross amount of possible profits and deducted nothing for the profits shown to have been actually made, the law certainly would provide some way

to enable the defendants to ascertain and correct an error so gross.

3. This brings us to the last and main ground of objection to the award, and that is the want of sufficient cause of action against the defendants, apparent on the face of the record. The plaintiffs in error maintain that the defendants in error claim in their declaration and by the submission damages for what, by their own showing, is only a public nuisance, for which no private action lies.

There is no dispute that the general rule of law is, that a private action will not lie for a public nuisance. It is the subject of indictment, not of action. The reason of the rule is, that it would create a multiplicity of actions; one being as well entitled to bring an action as another; and therefore, in cases of public nuisance, the remedy must be by indictment.—Co. Lit. 56 a.; Roll Abr. 88–110; Moor, 180; 2 Brownl, 147; Vaugh, 341; Cro. Eliz. 644; 3 Mod. 294; Carth. 171; Salk, 15 Pl.; 3 Black. Com. 219; 15 Geo. Rep. 61–62. The declaration and submission set out a public nuisance—the obstruction of a navigable river.

To this general rule there is an exception; namely, that if by such a nuisance, the party suffered a particular damage, as if by stopping up the highway by logs, any horse throws him, by which he is hurt or wounded, an action lies.—Cro. Jac. 446; Keb. 849. Now the point at issue is, do the plaintiffs come within the exception?

In this, as in many other cases, where the general principle has been departed from by engrafting exceptions upon it, the line of demarcation frequently becomes too dim and attenuated to be distinctly visible or clearly stated. We have examined with some care the numerous precedents, English and American, upon this subject; and it is not quite satisfactory to myself to determine on which side the weight of authority preponderates. There is, therefore, a want of entire confidence in the result at

which the court has arrived.  The question has received various determinations, according to the circumstances of each case.

In Pame vs. Patrick, Carth. 194, it was said by Lord Holt, that if a highway be so stopped, that a man is delayed a little while on his journey by reason whereof, he is damnified or some important affair neglected, that it is not such a special damage for which an action on the case will lie; but that the damage ought to be direct and not consequential as the loss of his horse or some corporal hurt in falling into a trench in the highway.

I will not refer to the case of Herbert vs. Groves, 1 Esp. Rep. 148, decided by Lord Kenyon, and a strong case in favor of the defendants.  1st, because the authority of that case has been greatly shaken; and 2dly, because it was adjudged since the Revolution, and consequently, not to be regarded here further than its intrinsic merit demands.

The case of Chichester vs. Lethbridge, (Milbs. 71,) appears to be the last adjudged case in England on the subject prior to the Revolution ; and is the leading case relied on to uphold the contrary doctrine.  It is briefly this : The defendant obstructed the highway by a ditch or gate across the road, by means of which the plaintiff was obliged to go a longer and more difficult way, to and from his close; *and the defendant opposed the plaintiff* in attempting to remove the nuisance.  It was held that an action well lay for special damages.

I would remark respecting this case, these two particulars—1st, the plaintiff had a special right to go to and from his close; and 2dly, the defendant in person withstood and opposed him, and prevented him from removing the obstruction, which by law, he might do.  The conclusion to which the court has come is this : That so far as the case stated in the original declaration is concerned, if supported by proof, it is justified by some of

the cases to be found in the Books, to-wit, that the steam-boat Fashion, owned by the plaintiffs as common carriers, was proceeding in and upon and along the Savannah river, with divers, goods, wares and merchandize, to be conveyed thereon from Augusta to Savannah; yet the S. C. R. R. Company, intending to injure the plaintiffs, and to deprive them of the use and benefit of said navigable stream, &c., whilst said boat was proceeding upon said river, &c., by reason of a bridge unlawfully constructed across said stream, obstructed said boat, &c., and stopped it for a long space of time, viz: for the space of ten days, &c., whereby the plaintiffs were damaged ten thousand dollars.

The truth of this averment is hardly conceivable; still, as we are deciding the case upon the declaration, we must assume it to be true. The balance of the plaintiffs demand as set forth in the writ, and the submission, is not so stated as to entitle them to any recovery. I confess I cannot exclude from my mind the conviction, that from the very nature of the pleadings, it is apparent the gravamen of the plaintiffs' claim, is for possible, prospective and speculative profits. What then shall we do with the award? It is for the sum of $29,992 77. May we infer that the whole of this amount was allowed under that part of the declaration which we admit to be good? This we cannot do; for it is near $20,000 more than they claimed for that injury. They laid their damages under the original writ for only $10,000. Is it a case where we could pronounce a judgment setting aside the award, unless the plaintiffs would write off the $20,000 excess? This is a discretionary power which the courts may and frequently do exercise. But we are satisfied it would not meet out the full measure of justice in this case. The jury only found $2,000 under the original declaration, and the defendants appealed from that verdict.

Upon the whole, we think it best to set aside the award

South Carolina Rail Road Co. vs. Moore & Philpot.

altogether, and remit the case back to be re-instated in the court below, to be tried under the first count, as restricted in this opinion, as to the damages resulting from the actual detention of the plaintiffs' boat Fashion, when in a course of navigation from Augusta to Savannah, by reason of the erection of this structure.

4. Has the court the power to review and set aside this award on account of the mistake in law, made by the arbitrators?

Here again there is a conflict of authority, because the courts have not said and stood to it that awards might or might not be examined into on account of the misconception of the law by the arbitrators. Upon one point there is a good degree of unanimity, namely, that if the award be clearly against law, and that fact appears upon its face, the court will interfere.—See 18 C. L. R. 200, note *a*, and the cases there cited.

That is the case. We decide the law of the case upon the face of the writ and the submission. Take the old example by way of illustration : A sues B for slander in charging him with stealing water from the town spring. The case is submitted to arbitrators; and they award damages to A. Would the courts suffer such an award to stand? Would they enforce it by a judgment? We apprehend not. This is that case, if we are right in our opinion of the law.

5. As to the preliminary motion to dismiss this writ of error, because the counsel for the defendants in error were not made parties to it, we hold that they were not necessary parties to this proceeding. They were not parties, either to the writ or the submission. It is true, that by agreement between the parties from the amount found for the plaintiffs was to be deducted the fees due their counsel, which were to be paid by the defendants directly to the attorneys. The rights of counsel do not arise until some sum is finally awarded to their clients.

And in that event there is no contest between them and the plaintiffs in error. They have been served with notice and are actually representing this case in the only legitimate way in which they are entitled to be heard; and that is, as counsel to sustain the award made in favor of their clients.

Judgment reversed.