BARNES *v.* AVERY.

No. 13848.   SEPTEMBER 13, 1941.   REHEARING DENIED OCTOBER 14, 1941.

*R. A. McGraw,* for plaintiff in error. *J. F. Hatchett,* contra.

ATKINSON, Presiding Justice. ■ It is in the first place insisted by counsel for defendant in error that the exceptions contain no distinct allegation of fraud, accident, or mistake, except the bare statement to that effect, which is a mere conclusion and should count for nothing. It is quite true that it is not sufficient to state in general terms that the award is the result of accident, mistake, or fraud, or is generally illegal. *Shaifer* v. *Baker,* 38 *Ga.* 135, 138. Here, however, the objector went further. He attached and made a part of his exceptions the evidence before the arbitrators. This saved his assault from being the statement of a mere conclusion. Not only that, but the exceptions themselves pointed out in several instances uncontradicted evidence which it is alleged the arbitrators overlooked. The exceptions were not subject to the criticism here dealt with. Compare *Sharp* v. *Loyless,* 39 *Ga.* 7, 13; *Tomlinson* v. *Hardwick,* 41 *Ga.* 547, 548; *Akridge* v. *Patillo,* 44 *Ga.* 585, 586-7; *Barnesville Manufacturing Co.* v. *Caldwell,* 48 *Ga.* 421; *Fowler* v. *Jackson,* 86 *Ga.* 337 (4 *a*) (12 S. E. 811).

■ It is argued in the brief that even if the arbitrators erred in deciding what the law was, this constitutes no cause for setting aside their award. It is true that where questions of law are expressly referred to arbitrators, a mere erroneous decision by them

of such question ordinarily constitutes no cause for setting aside their award. *Forbes* v. *Turner*, 54 *Ga.* 252. Nothing of the kind, however, was done here. "If an arbitrator act manifestly against law, and the error appear on the face of the award, the court will set aside the ward." *South Carolina Railroad Co.* v. *Moore*, 28 *Ga.* 398 (4) (73 Am. D. 778). *Benton* v. *Singleton*, 114 *Ga.* 548 (40 S. E. 811, 58 L. R. A. 181), was an action to enforce a common-law award. The holding was that a claim arising out of an illegal transaction is not a legitimate subject-matter for submission to arbitration, and an award founded thereon is a mere nullity. The opinion, after observing that "Surely no court can properly lend its sanction to an award based upon an unlawful demand," continued as follows: "This court refused so to do in *South Carolina R. R. Co.* v. *Moore*, 28 *Ga.* 398, holding that 'if an arbitrator act manifestly against law, and the error appear on the face of the award,' it will not be enforced. A pending case, the object of which was to recover damages growing out of the erection of a bridge across a navigable stream, was referred to arbitration. It appeared that a steamboat belonging to the plaintiffs as common carriers was 'stopped for a long space of time, viz., for the space of ten days,' by reason of this obstruction to navigation, which was a public nuisance. The arbitrators not only awarded compensation for the actual loss sustained, but also for 'prospective and speculative profits' which the plaintiffs sought to recover. A claim to such profits, the court ruled, was one not recognized by law; and in passing upon its 'power to review and set aside this award on account of the mistake in law made by the arbitrators,' the learned judge who delivered the opinion in the case said (page 421): 'Upon one point there is a good degree of unanimity, namely, that if the award be clearly against law, and that fact appears upon its face, the court will interfere. . . We decide the law of the case upon the face of the writ and the submission. Take the old example by way of illustration: A sues B for slander in charging him with stealing water from the town spring. The case is submitted to arbitrators, and they award damages to A. Would the courts suffer such an award to stand? Would they enforce it by a judgment? We apprehend not.'" The case from which the foregoing extract was taken did not involve an illegal transaction, in the sense that it was immoral, but merely a claim which was not one

recognized by law. In the *Benton* case the court, after calling attention to the fact that there was a conflict of authority as to whether or not a court should interfere on this ground where an award did not on its face disclose that it was founded upon a "misconception of the law by the arbitrators," and that some courts had gone to the extent of declining to hear proof that the arbitration included certain items the enforcement of which would contravene public policy, said: "But the correctness of these decisions is open to grave doubt, since it would seem that no court charged with the imperative duty of at all times giving effect to laws grounded upon public policy should ever refuse to receive proof of this character. We can not but regard with distrust a doctrine which, while recognizing that it would be grossly improper for courts of justice to affect total blindness, with palpable inconsistency undertakes to justify them in simulating absolute deafness. Certain it is that this court is not committed to any such doctrine. On the contrary, the uniform practice in this State has been to listen to any meritorious attack upon an award, however innocent a countenance it might wear, and to receive all competent extrinsic evidence going to show that it would be unjust to allow the findings of the arbitrators to stand." The Code, § 7-219, gives a party the right to file objections by suggesting on oath "that the award was the result of accident, or mistake, or the fraud of some one or all of the arbitrators or parties, *or is otherwise illegal.*" [Italics supplied.] Where such objections are duly filed, accompanied by the entire evidence taken before the arbitrators, it presents the question whether the award was contrary to all the evidence, and therefore illegal. The motion to dismiss must be treated as in the nature of a general demurrer, and as presenting the question whether the objections, accompanied by the evidence which was made a part thereof, are on their merits sound.

■ The evidence is voluminous, but it is not conflicting. For fifty years the lines had been established and acquiesced in. For more than sixteen years the plaintiff in error had been in undisputed possession of the land which is the subject-matter of this controversy. George Barnes went into possession under a deed from his father, made in 1892, and remained in possession until he sold it to Bullochville Home Mixture Guano Company in 1922. The possession of the guano company thereafter was peaceable,

open, adverse, until it conveyed the same to the plaintiff in error in 1923 for the purchase-price of $765, when he went into immediate possession, and has been in open and adverse possession since 1923, and up to the fall of 1939 no one had questoned his right of ownership or possession. Applying to the undisputed evidence the provisions of the Code, §§ 85-1602, 85-1603, 85-407, the plaintiff in error was entitled to an award in his favor. 'Not to so find must be attributed to "a palpable mistake of law." Compare Code, § 7-111.

It is insisted by counsel for the defendant in error, that, regardless of everything else, the plaintiff in error can not prevail, because he and one of his predecessors in title, on November 12, 1901, conveyed to another person, under whom the defendant in error claims, the west half of lot 143 in the 8th district. The basis of this argument is that A. J. Barnes is estopped now to claim any part of the west half of lot 143, and that this disputed parcel is in said west half. It, however, overlooks the undisputed testimony that at the time this land was sold to him A. J. Barnes told him that George Barnes was the owner of the offset in the grove (the land in controversy), and that it was so understood by Hill, who was shown the line now contended for by Barnes, and who knew that at the time George Barnes, predecessor in title of plaintiff in error, was in possession of the 2.6 acres claiming it as his own. It also must be remembered that after the deed of Barnes and others to Hill the guano company obtained title to this 2.6 acres from George Barnes, and that the company for value sold it to the plaintiff in error in the year 1923, and that under said last-named deed he has been in adverse possession of the same continually ever since.

By an amendment to his exceptions the plaintiff in error asked that the award be set aside, on the further ground that it was uncertain, indefinite, and went beyond the terms of the submission. It is not open to dispute that an award which goes beyond the terms of the submission is, to the extent that it exceeds the terms, not binding on the parties; or that an award which, reasonably construed, can not be said to find adversely to one of the parties on the issue that was submitted, can not be made the basis of a judgment adverse to him as to the controversy submitted to the arbitrators; but whether in such a case the award should be treated as a nullity, or set aside on a direct proceeding brought therefor,

or whether the same result could be reached by filing objections under the Code, § 7-219, need not be here decided. In *Cameron* v. *Castleberry*, 29 *Ga.* 495, the submission was made in a pending case, and the decision of this court was that the trial court erred in overruling a motion made during the trial of the main case that the award be rejected and set aside on the ground that the arbitrators had failed to decide one of the questions submitted to them. In *Evans* v. *Sheldon*, 69 *Ga.* 100, likewise the cause had been referred to arbitration. The only matter in controversy submitted to the arbitrators in the instant case, and the only matter on which they could render an award, was "in reference to the ownership of a certain tract or parcel of land." Since the judgment is to be reversed on the ground that the court erred in sustaining a motion to dismiss the objections filed by the plaintiff in error, because on the showing made by him, that is, that the evidence on which the arbitrators based their finding was correctly set forth by him in his objections, he was entitled to a finding that the ownership of the disputed parcel was in him, no specific ruling is made on the further contention of the plaintiff in error referred to in this division of the opinion.

It was erroneous to dismiss the objections to the award of the arbitrators and to make their return the judgment of the court, not only because on the showing made by the objector (treating the finding as adverse to him) he was entitled to an award to the effect that the ownership of the disputed property was in him, but for the additional reason that in making the award the judgment of the court, it thereby molded into a solemn pronouncement of the court an adjudication as to matters the determination of which had not by the parties been submitted to the arbitrament of the arbitrators.

*Judgment reversed. All the Justices concur.*